**Henry BOIT, Plaintiff,**

v.

**EMMCO INSURANCE COMPANY, an Indiana corporation, and Associates Investment Company, an Indiana corporation, Defendants.**

**Civ. No. 577.**

United States District Court
D. Montana,
Billings Division.

Aug. 24, 1967.

Charles A. Bradley, Billings, Mont., for plaintiff.

Hibbs, Sweeney & Colberg, Billings, Mont., for defendants.

## ORDER AND MEMORANDUM OPINION

JAMESON, Chief Judge.

The defendant Associates Investment Company, an Indiana corporation, has moved to dismiss, or in lieu thereof to quash service of summons, on the ground that the court lacks jurisdiction of the person of the defendant. It is contended (1) that the exercise of in personam jurisdiction would be in violation of the due process clause of the Fourteenth Amendment, and (2) that defendant's ac-

tivities in Montana were insufficient to fall within the scope of Rule 4, subd. B, Mont.R.Civ.P.[1]

On February 14, 1963, the plaintiff, Henry Boit, purchased a 1961 Chevrolet truck tractor from Bud Gates, Inc., in Indianapolis, Indiana. The purchase was made under a document entitled "Indiana Motor Vehicle Retail Installment Contract", which was assigned to defendant Associates Investment Company at the time of the purchase.[2] Plaintiff gave his address as 1201 E. St. Clair Street, Indianapolis, Indiana. The contract provides, inter alia, that title shall remain in the seller until the contract is fully performed, that the purchaser would not remove the vehicle from the county where he resided, and that both parties "have the rights and privileges with respect to repossession, resale, redemption and to the disposition of sale proceeds as are accorded by the laws of the State of Indiana." The contract required insurance in a company acceptable to seller, and contemporaneous with the execution of the contract Boit obtained a policy of insurance from the defendant Emmco Insurance Company.[3] The insurance premium was included in the contract price.

The residence given by plaintiff was that of a hotel in Indianapolis, where plaintiff stayed for approximately four weeks while attending a school for Mayflower truckers. His family remained in Billings, which at all times since September 1, 1955, has been plaintiff's permanent residence.

It was the practice of Mayflower drivers to buy their own trucks. The stipulation of counsel reads in part:

"At the time the retail installment contract was entered into on February 14, 1963, defendant, Associates Investment Company, had no knowledge that the motor vehicle would be moved to Montana. The defendant, Associates Investment Company, did at the time the contract was entered into, know that the motor vehicle would be used all over the United States and would be on the road possibly for several months at a time and used generally outside the State of Indiana."

Plaintiff was employed by Mayflower from on or about March 9, 1963, until July 22, 1963, and during that period "traveled all over the United States driving his truck for this firm". Upon the termination of his employment by Mayflower and on or about July 23, 1963, plaintiff moved the truck to Billings, Montana. While he "did not specifically obtain permission" from Associates to move the vehicle to Montana, the company "did learn in July of 1963 that plaintiff had quit Mayflower and at that time changed its records to show his Billings, Montana, address and raised no objection to his operating from Billings, Montana, so long as the payments were made according to schedule". Plaintiff mailed Associates numerous payments from Billings and received correspondence in Billings from Associates regarding the vehicle.

---

1. Counsel filed briefs, with supporting affidavits. The court requested clarification of certain facts. By stipulation filed August 11, 1967, the parties agreed upon the additional facts. It is this stipulation to which reference is made in this opinion.

2. Printed in the installment sales contract was the proviso that Boit would pay his "time balance" to Associates Investment Company. The words "Associates Investment Company" also appear in a later provision relating to assignment.

3. It appears from the affidavit of Clyde Gummow, a Deputy Insurance Commis-

sioner for the State of Montana, that Emmco Insurance Company, an Indiana corporation, filed annual statements in the State of Montana for the years 1963 and 1965; that out of 6,000 total shares of stock outstanding in this company, 5,960 shares were owned by the defendant Associates Investment Company; and that the remaining 40 shares were held as qualifying shares by the directors of Emmco Insurance Company. That defendant Emmco is a wholly owned subsidiary of defendant Associates Investment Company is supported by the affidavit of J. D. Barnette, the President of Associates Investment Company.

It is alleged that on April 27, 1964, the vehicle, while in use at Rapid City, South Dakota, was damaged by a severe windstorm. Some temporary repairs were made, and the vehicle was taken back to Billings, Montana. Plaintiff contends that this was done at defendant's request. Shortly thereafter, plaintiff apparently became delinquent in his payments on the contract.

On July 16, 1964, C. D. Furnish, the Assistant Collection Manager of Associates Investment Company, called Daniel T. Wheeler, an employee of Associates Discount Corporation in Billings, Montana, and requested him to repossess the vehicle from Boit. Wheeler took possession of the vehicle at a truck stop in Billings, and stored it until approximately August 19, 1964, when the vehicle was picked up by C. O. Minard of Indianapolis, Indiana, and taken back to Indiana.[4]

In May of 1965, Roger E. Cox, the collection manager of Associates Discount Corporation, received a written request from C. W. Goodnight of Associates Investment Company to apply for a repossession title for that company on the Boit vehicle. Pursuant to that request, Cox prepared and signed an Application for a Certificate of Title for Motor Vehicle and an Affidavit Covering Repossession, both dated May 14, 1965, and mailed them to the Montana Registrar of Motor Vehicles. The Affidavit Covering Repossession recites that Cox is the "Collection Manager of Associates Investment", and the Application for Certificate of Title, executed by Cox on behalf of "Associates Investment", gives the address of the applicant as "2917 Second Avenue North, Billings, Montana".

In an affidavit executed May 16, 1966, Cox states that he was at no time "employed or paid any salary by Associates Investment Company, an Indiana corpo-

ration," and that such company never had an office at 2917 Second Avenue North, Billings, Montana, contrary to his statements in the above documents. He states further that this address was the business address of "Associates Discount Corporation of Montana, a Montana corporation, and no other business was located at that address".

The stipulated facts show that Associated Discount Corporation of Montana is a wholly owned subsidiary of defendant Associates Investment Corporation.

From affidavits of J. D. Barnette, President of Associates Investment Company, it appears that this defendant has never been authorized to do business in Montana and does not maintain any office, factory or other facilities in the state; that Emmco Insurance Company, although a wholly owned subsidiary, "controls its own business affairs and conducts its business separate and distinct from that of Associates Investment Company"; and that Associates Discount Corporation, a Montana Corporation, was utilized by Associates Investment Company as "an independent agency in another state for a repossession in the other state".[5]

In summary, it appears that (1) the conditional sales contract was executed in Indiana covering property located in Indiana, between an Indiana corporation and a Montana resident temporarily in Indiana; (2) it was contemplated by all parties that the vehicle would be used principally outside the State of Indiana, and it was so used continuously from the time of purchase until July, 1963, when it was moved by plaintiff to Montana; (3) while plaintiff did not specifically request permission from Associates to move the vehicle to Montana, Associates knew when the vehicle was moved, changed its records accordingly, and payments on the contract thereafter were

---

4. Furnish's affidavit discloses that Minard was hired by Associates Investment Company on a bid, cost-plus contract. At the same time Minard returned another unit located in Montana to Indiana for Associates Investment Company.

5. The affidavit of J. D. Barnette discloses that Associates Investment Company "has many wholly and partially owned subsidiary corporations engaged in various kinds of business * * *."

mailed from Montana to defendant in Indiana; (4) following default, the seller arranged with one of its wholly owned subsidiaries, to repossess the vehicle; (5) an independent contractor from Indiana took the vehicle from Montana to the defendant in Indiana; (6) defendant arranged with its agent to obtain a new certificate of title in Montana; and (7) defendant has repossessed one other piece of equipment in Montana.

Plaintiff alleges that the repossessing of the vehicle by defendant in Montana was unlawful and seeks damages for its conversion.

Will the exercise of in personam jurisdiction under these facts offend the "traditional notions of fair play and substantial justice" embodied in the "minimum contacts" test of International Shoe Company v. State of Washington, 1943, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95? In that case the Court said that the test of due process is not dependent upon the quantity of the defendant's contacts with the state, but, "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." (326 U.S. at 319, 66 S.Ct. at 160).

In McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, it was held that a single transaction may be sufficient to satisfy the requirements of "minimum contacts". The Court, after reviewing the historical development in this area stated: "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." (355 U.S. at 222, 78 S.Ct. at 201).

The sweeping effect of McGee was limited somewhat the following year by Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, where the Court said, "But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * *" The

Court held further that the application of the minimum contact rule "will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the foreign State, thus invoking the benefits and protections of its laws". (357 U.S. at 251, 253, 78 S.Ct. at 1240).

The effect of International Shoe, McGee, Hanson and other cases in this area was considered by Mr. Justice Goldberg in an opinion denying stay pending appeal in Rosenblatt v. American Cyanamid Company, 1965, 86 S.Ct. 1, 15 L.Ed.2d 43, where the alleged tortious act occurred in New York, the forum state. Mr. Justice Goldberg said in part: " * * * In cases under these (long arm) statutes in state and federal courts jurisdiction on the basis of a single tort has been uniformly upheld:

'Indeed, the constitutionality of this assertion of jurisdiction, today, could only be doubted by those determined to oppose the clear trend of the decisions. This situation is exactly that of the nonresident-motorist statutes, which were long ago upheld, except that the highways are not directly involved. It is now clear, if it was ever in doubt, that the nonresident-motorist cases were not really based on "consent" but on the interest of the forum State and the fairness of trial there to the defendant.' Currie, The Growth of the Long Arm, 1963 U.Ill.Law Forum 515, 540.

' * * * Currie has interpreted and generalized the Hanson test as a requirement "that the defendant must have taken voluntary action calculated to have an effect in the forum state".' Currie, op cit, at 549." (86 S.Ct. at 3, 15 L.Ed.2d at 43, 44).

It will be noted from Hanson that it is essential "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State", and, as Mr. Justice Goldberg pointed out in Ros-

enblatt, Professor Currie has interpreted and generalized this test as a requirement "that the defendant must have taken voluntary action calculated to have an effect in the forum state".[6]

Both parties have submitted helpful and well-written briefs. Plausible arguments are made in support of their respective positions. Particularly on the basis of the additional facts set forth in the stipulation filed August 11, 1967, it is my conclusion that defendant's contacts with Montana were sufficient to meet the "minimum contact" test of due process and confer jurisdiction upon this court. While the contract itself provided that the purchaser would not remove the vehicle from Indiana, it is undisputed that when the contract was entered into the defendant knew the vehicle would be used throughout the United States. The defendant also knew when the vehicle was moved to Montana, offered no objection, changed its records accordingly, and accepted payments thereafter mailed from Montana. Following the accident in South Dakota, the vehicle was returned to Montana at defendant's request. The defendant had its agent, a wholly owned subsidiary, take possession of the vehicle in Montana and take the necessary steps to obtain title to the repossessed vehicle.[7]

■ Since it is the conclusion of the court that the minimum contact test of due process has been met, it is necessary to determine whether defendant's activities were sufficient to confer jurisdiction under Rule 4, subd. B Mont.R.Civ.P. Rule 4, subd. B(1) reads in part: " * * any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts: * * (b) the commission of any act which results in accrual within this state of a tort action: * * * "

■ This provision is perhaps the broadest adopted by any state for substitute service in a tort action. In effect it codifies the minimum contact test.[8] The concept of Rule 4, subd. B is far more liberal than the old concept of "doing business in the state" considered in prior decisions.[9]

It seems clear that the allegations of the amended complaint relative to the acts of Associates in repossessing the vehicle in Montana through its agent come with-

6. See also Bullard v. Rhodes Pharmacal Company, D.Mont.1967, 263 F.Supp. 79, and Continental Oil Company, et al v. Atwood & Morrell, D.Mont.1967, 265 F. Supp. 692, and cases therein cited. Under different factual situations it was held in each case that the service met the minimum contacts test of due process.

7. Each case of course must be decided on its own facts. If a vehicle were sold under a similar contract to a permanent resident of a state and the vendee moved the vehicle to another state without the consent or knowledge of the vendor, and it became necessary, upon default, for the vendor to repossess in the state to which the vehicle is moved, a court might well hold that the act of the vendor in repossessing the vehicle was not the result of any voluntary action on its part, but rather compelled by the wrongful action of the vendee.

8. "Clause '(b)', providing for substituted service in the tort field, probably is the broadest single provision authorizing substituted service on a tort action * * * the Montana provision includes any case of any foreign act causing tortious injury in Montana." Briggs Contemporary Problems in Conflict of Laws Jurisdiction by Statute 24 Mont.L.Rev. 85, 88 (1963).

9. Defendant in its brief relies heavily upon the opinion of this court in Graham & Ross Mercantile Company v. Sprout, Waldron & Co., 1959, 174 F.Supp. 551. That case was of course decided prior to the adoption of the present Montana Rules of Civil Procedure, and the court was concerned primarily with the question of whether defendant's activities constituted "doing business" in Montana. The court also took the position that the defendant had not met the "minimum contacts" test of due process, although this was not necessary to the decision. This case was decided in 1959, and it should be noted that the "minimum contacts" test has been clarified and liberalized in many cases decided subsequent thereto. See also Hartung v. Washington Iron Works, D.Mont.1964, 267 F.Supp. 408; Mason, The Montana Rules of Civil Procedure, 23 Mont.L.Rev. 3, 12.

in the rule conferring jurisdiction for the commission of an act "which results in the accrual within this state of a tort action".

It is ordered that the motion is denied and the defendant Associates Investment Company is granted 20 days to plead further.