384 F.2d 797
 CONSOLIDATED LABORATORIES, INC., a corporation, Plaintiff-Appellant,
v.
SHANDON SCIENTIFIC COMPANY, Ltd., a corporation, Shandon
Scientific Company, Inc., a corporation, Shandon Scientific
Industries, Ltd., a corporation, Ernest R. Shandon, and
George D. Welch, Defendants-Appellees.
 No. 16086
 United States Court of Appeals Seventh Circuit.
 Aug. 29, 1967.
 
 Patrick W. O'Brien, George Bobrinskoy, Jr., Chicago, Ill., for plaintiff-appellant, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel.
 Laurens G. Hastings, David P. List, Donald A. Mackay, Chicago, Ill., for defendants-appellees, Leibman, Williams, Bennett, Baird & Minow, Chicago, Ill., of counsel.
 Before HASTINGS, Chief Judge, and KILEY and SWYGERT, Circuit Judges.
 KILEY, Circuit Judge.
 
 
 1
 This diversity action charged that defendants Shandon Scientific Company, Ltd., and Shandon Scientific Industries, Ltd., both of England, referred to as Shandon/London,[1] breached a contract with plaintiff; and that Shandon Scientific Company, Inc., of Pennsylvania, and its President, George welch, and Ernest Shandon, of London, England, acted in concert unlawfully to induce Shandon/London to breach that contract. Plaintiff seeks an injunction and damages. The district court dismissed the suit for lack of personal jurisdiction over defendants, and plaintiff has appealed. We reverse and remand.
 
 
 2
 Shandon/London manufactures scientific equipment for biological and biochemical laboratories. Beginning in 1959 plaintiff acted as exclusive United States Distributor. In May, 1963, this relationship was expressed in a written five-year contract. In September, 1965, the parties agreed to terminate the 1963 contract, and a new written contract was made on October 6, 1965, under which plaintiff was no longer exclusive distributor. In May, 1966, Shandon/Pennsylvania was incorporated. On August 6, 1966, Ernest Shandon, representing Shandon/London, wrote plaintiff terminating the agreement, and this action followed.
 
 
 3
 The vital questions are whether plaintiff's contract claim arises from the transaction of business in Illinois by Shandon/London within the meaning of the 'long arm' statute,[2] and whether Shandon/Pennsylvania, Welch, and Ernest Shandon committed tortious acts in Illinois within the meaning of the statute.
 
 
 4
 So far as pertinent here, the complaint alleges in substance that the negotiations leading to the 1963 contract with Shandon/London were carried on in Illinois and England; that plaintiff's efforts greatly expanded the United States market for Shandon products; that the products were shipped from England to Illinois and paid for in Inninois; that following negotiations in Illinois in June and July, 1965 between plaintiff and Shandon/London, represented by Ernest Shandon, they agreed to a new contractual relationship in October, 1965, which was accepted by plaintiff in Illinois; that by the terms of this agreement plaintiff was to be appointed a major United States dealer for Shandon products by an American company to be formed as 'main distributor'; that after the formation of Shandon/Pennsylvania in May, 1966, it was operated not as 'main distributor' but as a direct seller; and that United States Customers of Shandon/London, including plaintiff's, were notified of the direct sales policy in trade journals and press releases distributed in Illinois. The complaint alleges further that Shandon/London terminated and thereby breached the October 6, 1965 contract by a letter dated August 6, 1966; and that Shandon/Pennsylvania, welch and Ernest Shandon maliciously induced the breach.
 
 
 5
 George Welch and Ernest Shandon filed affidavits in support of the motion to dismiss. They assert that in June, 1965, they met with plaintiff's Director, Dr. Scherr, for 3 1/2 or 4 hours. Welch states that the June 23, 1965, discussion concerned the formation of Shandon/Pennsylvania and its function as supplier of Shandon products 'directly through representatives and * * * dealers.' Ernest Shandon states that the discussion was on June 28 and concerned plaintiff's failure to perform under the 1963 agreement with respect to terms of payment, failure to promote Shandon's products 'as such,' and failure to provide growth in sales. He states that there was no subsequent meeting in Illinois regarding cancellation of the 1963 agreement and that no agreement was reached in Illinois to cancel, but that in September Scherr appeared in London to address Shandon/London's Board of Directors with respect to the 1963 agreement; that after the meeting Scherr was advised in London that the agreement was to be cancelled; that Scherr agreed but brought the 'Memorandum of Agreement' back to Illinois, signed it there and sent it to England on October 6, 1965; and that no Shandon company has offices or bank accounts in Illinois.
 
 
 6
 Dr. Scherr filed an affidavit stating that twice between October, 1959, and May, 1963, Ernest Shandon and Newman, Shandon/London's export manager, came to Illinois to discuss formalizing the distributorship relation between Shandon and plaintiff; that copies of the signed May 15, 1963, contract were mailed to Scherr in Illinois; that in May, 1964, Ernest Shandon Discussed a new contract with Scherr in Illinois to 'reduce three significant problems' in the 1963 agreement: new styling of Shandon products, more expeditious shipping by Shandon/London and allocation of the credit burden between the parties; that the June 28, 1965, Illinois meeting between Scherr and three Shandon representatives lasted most of the business day; that they discussed the formation of Shandon/Pennsylvania and plaintiff's relationship with it; that on June 30 and July 1 a Shandon representative met again in Illinois with Scherr; that at no meeting was cancellation of the 1963 agreement discussed, although Shandon on June 28 expressed dissatisfaction with lack of growth of business but held plaintiff blameless; that plaintiff fully performed under that contract; that Scherr appeared in London to discuss a proposed 'joint venture' between plaintiff and the planned Shandon/Pennsylvania, but that the 'main distributor' idea was agreed to; that the 'Memorandum of Agreement' was signed by him in Illinois, and mailed to England; and that four named periodicals printed the advertisement of Shandon/Pennsylvania and the Shandon/Pennsylvania solicited sales in Illinois by letter. This last statement was supported by a copy of a letter of August 17, 1966 from Welch to an Illinois hospital enclosing a catalogue of Shandon/Pennsylvania products, promising a list of prices, and offering to quote prices on products from 'stock' in Pennsylvania.
 
 
 7
 The district court decided that Shandon/London transacted business in Illinois under the 1963 contract but that it did not do business in Illinois under the contract sued upon, the agreement of October, 1965. The district court held it had no jurisdiction over defendant Shandon/London because the claim did not arise from the transaction of business. With respect to the other defendants, Shandon/Pennsylvania, Welch and Shandon, the court decided that, although their alleged actions were tortious acts committed in Illinois, the exercise of jurisdiction over them would violate due process under Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The court distinguished McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), because defendant there actively solicited and serviced plaintiff in his home state.
 
 
 8
 The evidence of sufficient contacts within a state, to avoid violation of due process by substitute service on non-residents, depends upon the particular facts of each case. Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761, 767 (1961). The service there was sustained in a tort case, where defendants only contact in Illinois was its sale in the course of commerce there of a valve put into a water heater in Pennsylvania which exploded and injured plaintiff. This is the pioneer and leading Illinois case determining the 'extent to which due process permits substituted service where defendant had no agent or employee' in Illinois. 176 N.E.2d at 763.
 
 
 9
 It is needless to discuss the evolution of this idea of valid service from a forum state upon non-resident defendants, brought about by the nationalization of commerce through the use of the mails and otherwise.[3] See Grobark v. Addo Machine Co., 16 Ill.2d 426, 158 N.E.2d 73 (1959); Gray v. American Radiator & Standard Sanitary Corp., 176 N.E.2d at 765. The due process implications were settled in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). There must be sufficient 'minimum contacts' to make it reasonable and just according to our traditional concepts of fair play and substantial justice to satisfy due process requirements. See also National Gas Appliance Corp. v. AB Electrolux, 270 F.2d 472, 475 (7th Cir. 1959), cert. denied, 361 U.S. 959, 80 S.Ct. 584, 4 L.Ed.2d 542 (1960).
 
 
 10
 The Illinois Supreme Court in Gray said that requirements for jurisdiction 'have been further relaxed' since International Shoe and now it is enough that the 'act or transaction itself' has a substantial connection with the forum state. 176 N.E.2d at 764. The court also said that the relevant inquiry as to the 'fair and reasonable' test is whether defendant engaged in an act or in conduct by which he may be said to have invoked the benefits and protections of the forum state. The trend, it is said, in defining due process is away from territorial limitations and toward emphasis on notice and opportunity to be heard. But 'procedural rules must be designed and appraised in the light of what is fair and just to both sides'. 176 N.E.2d at 766. The legislative intent of the Illinois long arm statute is to exert jurisdiction over non-residents to the extent permitted under the dur process clause. Koplin v. Thomas, Haab and Botts, 73 Ill.App.2d 242, 219 N.E.2d 646, 649 (1966).
 
 
 11
 Following the Gray decision, the Appellate Court of Illinois in 1966 in Koplin v. Thomas, speaking through Justice Dempsey, decided that physical presence, although a factor in the jurisdictional question, is not the controlling factor. It said that in Gray the Supreme Court had decided effectually that physical presence was not required in personal injury cases to establish jurisdiction and that it saw no 'substantial reason' for distinguishing personal injury cases from business transactions. See also Ziegler v. Houghton-Mifflin Co., 80 Ill.App.2d 210, 224 N.E.2d 12 (1967).
 
 Shandon/London
 
 12
 The district court decision as to Shandon/London rested on the implicitfinding that all that had transpired in Illinois before the making of the October, 1965, contract was irrelevant to the question of jurisdiction. We consider this a too restricted view of the facts, although it is not necessary for us to discuss transactions under the 1963 contract in isolation because of the transaction of business leading to and pursuant to the October 1965 contract. The 1965 contract was developed from the earlier relationship beginning in 1959 and was effectually a modification thereof under which Shandon's products were shipped into Illinois, sold and paid for. Part of the negotiations for both the 1963 and 1965 contracts were carried on in Illinois with Ernest Shandon and others representing Shandon/london. The memorandum of the 1965 contract was signed by plaintiff in Illinois.
 
 
 13
 We think these activities in Illinois by and on behalf of Shandon/London bring them within the reach of the Illinois long arm statute. National Gas Appliance Corp. v. AB Electrolux, 270 F.2d at 475. The plaintiff's claim lies 'in the wake' of defendant's Illinois business activities. Koplin v. Thomas, 219 N.E.2d at 651.
 
 
 14
 This court in Kokomo Opalescent Glass Co. v. Arthur W. Schmid Int'l., Inc., 371 F.2d 208 (7th Cir. 1966), on authority of National Gas, approved an Indiana district court's decision that a Pennsylvania resident was subject to the Indiana long arm statute. There defendant in January, 1962, contracted to perform its contract with plaintiff within six months. It did not perform until January, 1963, and plaintiff sued for breach. The district court based its decision that service on defendant in Pennsylvania was valid, in part, upon activities of defendant's agents in Indiana after the breach in August, 1962. We think Kokomo confirms our view that what preceded October 6, 1965, in Illinois is relevant to whether a breach of that contract arose out of the 'transaction of any business' in Illinois.
 
 
 15
 The question then in whether defendant's Illinois activities constituted 'minimum contacts' sufficient to avoid offending 'traditional notions of fair play and substantial justice.' We think they did.
 
 
 16
 Starting in 1959 and until August, 1966, the English corporation shipped products into Illinois for sale and distribution in the United States. The inference from the complaint is that there was substantial use and consumption of the products in Illinois and that they enjoyed, therefore, indirectly, benefits and protection from illinois laws. Gray v. American Radiator & Standard Sanitary Corp., 176 N.E.2d at 766. In addition there is at least 'a close relationship' between defendant's negotiations in and visits to Illinois and plaintiff's claim for breach of contract. Koplin v. Thomas, 219 N.E.2d at 651.
 
 
 17
 We are not persuaded by Shandon/London that the mechanics of its sales by use of bills of exchange transmitted from the English bank to plaintiff's Illinois bank with necessity of guarantee of payment within ninety days after acceptance, removes them from the benefits or protection of Illinois law.
 
 
 18
 Shandon/Pennsylvania, Welch & Ernest Shandon
 
 
 19
 The tortious conduct alleged by plaintiff is that Shandon/Pennsylvania, Welch and Ernest Shandon knowingly disregarded valuable rights of plaintiff under the 1965 contract in causing the corporation to trespass on those rights by advertising and soliciting direct sales to customers in Illinois.
 
 
 20
 We think the decision of the Illinois Supreme Court in Gray, and the decisions in National Gas and MeGee, are determinative of the issue here. Taken as true, the allegations of the complaint and affidavits establish a 'tortious act' in Illinois, because the damage occurred there Gray v. American Radiator & Standard Sanitary Corp., 176 N.E.2d at 762-63.
 
 
 21
 We think the service of process is not fundamentally unfair so as to affront due process. Welch and Shandon, knowing that under the 1965 agreement Shandon/Pennsylvania was to be a 'main distributor' with plaintiff a favored dealer and the corporation to limit sales to dealers, created the Pennsylvania corporation, not as a main distributor limited to sales to dealers but to sell retail in competition with plaintiff. They also engaged in advertising and solicitation in Illinois in furtherance of that purpose. And, taking the allegations of the complaint as true, the visits of Ernest Shandon and Welch to Illinois were closely connected to the inducement of the breach because the formation of Shandon/Pennsylvania enabled Shandon/London to breach its contract with plaintiff while still maintaining its position in the United States market. The decisions of Illinois cases and cases of this court prior to Gray and National Gas, respectively, are of no aid to defendants.
 
 
 22
 We hold that service in England on Ernest Shandon and in Pennsylvania on Welch and the Pennsylvania corporation was valid under the 'tortious act' provision of the Illinois statute, and that the defendant's contacts were enough to satisfy due process requirements.
 
 
 23
 Reversed and remanded for further proceedings.
 
 
 
 [1]
 Shandon Scientific Industries, Ltd., was formerly named Shandon Scientific Co., Ltd. Defendant Shandon Scientific Co., Ltd., was formerly called Shandon Scientific Co. (Sales), Ltd. The district court treated the two companies as one for purposes of the motion to dismiss and was justified in doing so
 
 
 [2]
 ILL.REV.STAT. ch. 110, 17 provides in pertinent part:
 (1) Any person, whether or not a citizen or resident of this State, who is person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
 (a) The transaction of any business within this State;
 (b) The commission of a tortious act within this State;
 (2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State.
 
 
 [3]
 See Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 ILL.L.FORUM 533