STATE OF MONTANA, EX REL. CHARLES W. GOFF, RE-
LATOR, *v.* THE DISTRICT COURT OF THE FIRST JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN AND FOR THE
COUNTY OF LEWIS AND CLARK, AND THE HONORABLE
VICTOR H. FALL, PRESIDING JUDGE THEREOF, RESPONDENTS.

No. 12059.
Submitted April 27, 1971.
Decided July 23, 1971.
487 P.2d 292.

Meloy, Kline & Niklas, John R. Kline, argued, Helena, for
relator.

Small, Cummins & Hatch, Carl A. Hatch, argued, Helena, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Original proceeding. Relator, Charles W. Goff, seeks an appropriate writ to require the respondent district court to vacate its order of March 30, 1971, and then dismiss the complaint and quash the service of summons for lack of jurisdiction.

It appears that on March 2, 1971, Jack G. Holt, Raymond K. Whale and Leslie D. Murdock, hereinafter referred to as plaintiffs, filed an action in the district court of Lewis and Clark County seeking to void a contract made by and between plaintiffs and relator and further seeking the return of a $5,000 payment made by plaintiffs to relator.

Summons was issued by the clerk of Lewis and Clark County district court on March 2, 1971 and served in Salt Lake City, Utah, on March 4, 1971. On March 24, 1971, relator, through his counsel, made a special appearance for purpose of motion to dismiss the complaint and quash the service of summons for lack of jurisdiction, upon the grounds: (1) that relator, a citizen and resident of Utah, was not served with process in Montana and under Rule 4B, M.R.Civ.P., is not subject to the jurisdiction of the district court; (2) that the complaint shows the court has no jurisdiction over either the relator or the subject matter of the complaint; and (3) that under the existing facts the assumption of jurisdiction by a Montana court is prohibited by the Fourteenth Amendment to the United States Constitution. Following a hearing on relator's motion, the court ordered that the motion to quash service and to dismiss be denied and relator was granted 20 days to plead to the complaint.

Relator contends the district court committed manifest error in so ruling and that no direct appeal lies from the order; that if he pleads further he will be in danger of submitting himself to jurisdiction; and, that under any circumstances the remedy

of appeal is inadequate as it would have to await the outcome of a trial on the merits. In this situation relator seeks the issuance of an appropriate writ to require the district court to vacate its order and dismiss the complaint and quash service of the summons.

Following ex parte presentation to this Court ·by counsel for the relator, an. order to show cause was issued returnable on April 27, 1971. The respondents, through counsel, filed an answer and return thereto and the matter was orally argued before the Court and submitted.

Supplementary to his special appearance relator submitted to the Court affidavits of relator and one John G. Marshall, his Utah counsel. We refer to these documents to ascertain the fact situation as contended on behalf of relator. His affidavit states: He held a membership in the Philadelphia-Baltimore-Washington Stock Exchange which he desired to sell in November 1970. During that month Leslie D. Murdock, one of the plaintiffs in the district court action, came to Salt Lake City and was introduced to relator by Barry Gardner, an employee of an accounting firm in Salt Lake City, which firm was not agent, employee, representative, or under control of relator. Murdock discussed with relator the possibility of purchasing the stock exchange membership. Later in the month, around Thanksgiving time, Murdock, together with his attorney, came to Salt Lake City and met with Gardner, relator and his attorney, John G. Marshall, in relator's office. At that time relator informed Murdock the rules of the stock exchange required that membership could not be sold for less than a price established from time to time by the exchange and the minimum price at that time was $16,500. Murdock indicated his firm, Holt, Murdock and Whale, Inc., did not have sufficient cash to pay the full purchase price in cash; inquiry was made with the stock exchange and the parties agreed the membership would be purchased by the plaintiffs, as individuals, for the sum of $16,500, payable $5,000 down, and the balance on or before March 7, 1971. Thereupon Murdock delivered to relator the sum of $5,000, the down payment. The

parties further agreed that relator would retain a purchase money mortgage lien upon the membership. Thereupon relator's attorney prepared a written contract of sale, which was forwarded by relator to plaintiffs at Helena, Montana, through the United States mail. Thereafter certain changes in the written contract were made and it was returned to relator by United States mail. (Photostatic copy of the signed contract is an exhibit before us and no changes are evidenced thereon, so it is apparent that the contract submitted by relator was redrafted by plaintiffs.) Subsequent to January 19, 1971, relator and Murdock agreed by telephone between Helena and Salt Lake City on all final details of the contract and on or about February 2, 1971, relator executed an assignment of the stock exchange membership and mailed the same to plaintiffs. The envelope was never returned. Neither relator, nor anyone acting on his behalf, was physically present in the state of Montana during any part of the negotiation of the contract of sale.

The affidavit of John G. Marshall, relator's Utah attorney, is to the same effect.

The signed agreement is dated January 7, 1971 and provides that the balance of the purchase price of $16,500 "shall be payable at no interest on a date no later than sixty (60) days from the date of this agreement." Photostatic copy of a letter from relator to Murdock, dated January 19, 1971, states:

"The signed agreement looks good to me and we will expect the balance of the proceeds to be paid by March 7, 1971. However, there appears to me that an interest factor should be included and at 8%, the monthly interest would amount to $76.66 or $153.32 for the 60 days. The total amount still due is $11,-653.32. If this is agreeable with you then I will have John proceed with the transfer of the membership to you through the Philadelphia exchange.

"Any further questions, let me know."

Relator further states in his supporting affidavit that subsequent to January 19, 1971, agreement was had on all the final details of the contract.

It would appear then that relator's letter of January 19, 1971 was intended to modify the terms and conditions of the contract dated January 7, 1971 and that acceptance of these terms was a condition precedent to the transfer of the seat on the exchange.

There is no evidence of Holt, Murdock and Whale, Inc.'s acceptance of the modified contract.

It is clear from the above facts that although the primary negotiations were had in Utah, the negotiations continued via telephone and mail in Montana; that delivery was contemplated and would be made in Montana; and, that the purchase money first mortgage or equivalent lien on the membership as provided for by the alleged contract would have followed the membership to Montana.

Thus, the *locus* of the contract was in Montana to a degree sufficient to bring the transaction and the relator within the provisions of Rule 4B, M.R.Civ.P.

In McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, the court held that International Life Insurance Company had substantial connection with the state of California, where it assumed a life insurance contract that McGee had purchased from Empire Mutual Insurance Company. Neither insurance company had an officer or agent in California and apart from the McGee policy, neither had solicited or done any other insurance business in California. Yet the offer of insurance was made by mail in California, the offer was accepted in California, and the payments were made from California.

If such facts are sufficient, so much more so are they here, where the contract was negotiated in Montana; if accepted, accepted in Montana; with delivery to be had in Montana with a lien to follow the subject matter to Montana.

The case before us is easily distinguishable from Yules v. General Motors Corporation, 297 F.Supp. 647 (D.C.Mont.1969), where it was held that Montana had no jurisdiction under its long arm statute over defendant Cooley Chevrolet Co., Inc., a commercial automobile seller, who had not performed any act

nor consummated any transaction personally or otherwise, within the state of Montana. The sale there was initiated and consummated entirely within the state of Connecticut.

Paragraph VII of the complaint filed by plaintiffs against relator sounds in tort, alleging that relator failed to advise Holt, Murdock, and Whale, Inc. of a substantial change in the minimum price of the exchange seat, the subject matter of the alleged contract.

Without determining the merits of the claim, suffice it to say that if a tort was committed it was committed in Montana where Holt, Murdock and Whale, Inc. would have had to be informed of the change. In such event, jurisdiction would be present as expressed in Boit v. Emmco Insurance Company, 271 F.Supp. 366 (D.C.Mont.1967), where the United States District Court upheld the jurisdiction over the defendant under the long arm statute, holding that Montana rule providing for substituted service in a tort action in effect modifies the minimum contact test of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed 95, 161 A.L.R. 1057, and authorizes substituted service on a defendant in a tort action with a lesser showing of activity in a state than is required under other similar rules which require a showing of doing business in the state. Rule 4B(1), M.R.Civ.P.

The relief sought is denied and the cause is ordered dismissed.

MR. JUSTICES JOHN C. HARRISON, CASTLES, HASWELL, and DALY, concur.