Carol **CROTEAU,** Renee Jones, and Keith Moore, Plaintiffs,

v.

The **NATIONAL BETTER LIVING ASSOCIATION, INC.,** a foreign corporation; **Allied Health Benefits, Inc.,** a foreign corporation; **The United States Life Insurance Company in the City of New York,** a foreign corporation; **The Life Insurance Company of North America,** a foreign corporation; **Albert Cormier Solutions, LLC,** a foreign limited liability company; **Health Lead Systems, Inc.,** a foreign corporation; **George E. Spalding, Jr.; Susan Spalding; Timothy Siewert; Michael Siewert; G. Daniel Siewert, III; Barry Shaw, Jr.; John Fabbrini;** and **John Does 1–10,** Defendants.

No. CV 12–200–M–DWM.

United States District Court, D. Montana, Missoula Division.

May 30, 2013.

Amy Eddy, David Sandler, Bottomly & Eddy & Sandler Trial Attorneys, PLLP, Kalispell, MT, for Plaintiffs.

John W. Oxendine, Attorney at Law, Atlanta, GA, Lewis E. Hassett, Shannon A. McNulty, Morris Manning & Martin LLP, Atlanta, GA, Shandor S. Badaruddin, Moriarity Badaruddin & Booke, LLC, Bradley J. Luck, Jeffrey M. Roth, Garlington, Lohn & Robinson, PLLP, Missoula, MT, Michael J. Lober, Lober Dobson & Desai LLC, Roswell, GA, Kevin D. Feeback, Gough Shanahan Johnson & Waterman, Kimberly A. Beatty, Browning Kaleczyc Berry & Hoven, Helena, MT, for Defendants.

ORDER

DONALD W. MOLLOY, District Judge.

Three Motions to Dismiss are before the Court in this matter. Defendant Albert Cor-

mier Solutions, LLC (ACS) brings a Motion to Dismiss claims against it pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (Doc. 56.) Defendants The National Better Living Association (NBLA), Allied Health Benefits, Inc. (AHB), George E. Spalding, Jr., Susan Spalding, Timothy Siewert, G. Daniel Siewert, Barry Shaw, Jr., and John Fabbrini (the Individual Defendants) bring a Motion to Dismiss claims against them pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), 8(a)(2), 8(c)(1), and 9(b). (Doc. 58.) Defendant the United States Life Insurance Company in the City of New York (USLI) brings a Motion to Dismiss claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 60.) Plaintiffs First Amended Complaint (doc. 82) was filed May 21, 2013. Defendants' motions are considered in relation to the now-operative First Amended Complaint.

## I. Albert Cormier Solutions, LLC's Motion to Dismiss

### A. Capacity to Be Sued

 Defendant ACS argues its legal existence was terminated and assets distributed prior to the filing of Plaintiff's complaint and, thus, it lacks the capacity to be sued and must be dismissed. (Doc. 57 at 2–3.) In August 2010 ACS was administratively dissolved by the Tennessee Secretary of State. (*Id.* at 3.) A year later, ACS filed articles of termination with the Tennessee Secretary of State. (*Id.;* Doc. 57, ex. B.) The Articles of Termination stipulate that all assets were distributed to creditors and members.[1] (*Id.*) ACS argues that under Tennessee law, claims against dissolved entities are only enforceable to the extent of the organization's undistributed assets, citing Tenn.Code Ann. § 48–249–611(d)(1). Therefore, Defendant ACS argues, since the company was administratively dissolved and filed articles of termination, there are no enforceable claims against it and Plaintiffs' complaint must be dismissed. (Doc. 57 at 3–4.)

Plaintiffs do not dispute that ACS completed the winding-up of its business and

filed Articles of Termination in August 2011. Plaintiffs argue that even if ACS is correct in-whole or in-part regarding its representations of the legal existence of the organization, Plaintiffs are entitled to discovery regarding insurance coverage, the circumstances of dissolution, and possible successor liability. (Doc. 68 at 3.)

Both arguments miss the mark. Defendant ACS misinterprets Tennessee law regarding notification of claims on dissolution of an LLC. Plaintiffs' statement that their claim should proceed is vacant of any supporting legal authority. An investigation of Tennessee corporations law reveals Plaintiffs' claims against ACS may proceed on a theory of successor liability.

 Rule 17(b)(2) provides a corporation's capacity to be sued is determined by the state law under which it was organized. Fed.R.Civ.P. 17(b). It is undisputed that Defendant ACS was organized under the law of the state of Tennessee. (Doc. 57, ex. A.) Defendant ACS argues Tennessee Code Annotated § 48–249–611(d)(1) bars Plaintiffs' claims because filing of Articles of Termination demonstrate all assets of the LLC have been distributed. ACS claims § 48–249–611(d) provides that creditors whose claims are not barred by the general claim termination provisions of § 48–249–611 may only proceed against the dissolved LLC to the extent of its undistributed assets. (Doc. 57 at 4.) This conclusion is legally incorrect because § 48–249–611(d) is phrased in the disjunctive. In the event a dissolved LLC provided neither specific notice to creditors under § 48–249–611(b) nor notice by publication under § 48–249–611(c), a creditor may proceed against *either* the dissolved LLC to the extent of its undistributed assets, Tenn. Code Ann. § 48–249–611(d)(1), *or* against members or holders of financial rights of the dissolved LLC within three years of the filing of Articles of Termination, Tenn.Code Ann. § 48–249–611(d)(2).

Defendant ACS does not lack capacity to be sued because, even though all the assets

---

1. The Court's consideration of public records introduced in support of Defendant ACS's Motion to Dismiss does not require conversion of the motion to a Motion for Summary Judgment. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688–89 (9th Cir.2001).

of the LLC have been distributed, Plaintiffs' claims may proceed against members or holders of financial rights of the dissolved LLC pursuant to § 48–249–611(d)(2). In conjunction with its Motion to Dismiss, Defendant ACS did not produce information regarding termination of creditors' claims by specific notice or publication. ACS's Articles of Termination were filed in August 2011 and this action commenced in December 2012. (*See* doc. 57, ex. B; doc. 1.) Plaintiffs' claims on a theory of successor liability are therefore legally sufficient under § 48–249–611(d)(2) as they are brought within three years of the filing of the filing of articles terminating the existence of ACS. ACS's Motion to Dismiss on these grounds is denied.

While Plaintiffs' claims are not barred as a matter of law for lack of capacity as to ACS, if discovery reveals information supporting claims against members or holders of financial rights of the now-dissolved entity, Plaintiffs are reminded that joinder of such individuals or entities may be required under Rule 19. *See* Fed.R.Civ.P. 19(a)(1).

### B. Adequate Factual Allegations

Defendant ACS claims Plaintiffs have failed to plead their fraud and RICO claims with particularity and therefore they must be dismissed. Plaintiffs argue their complaint sufficiently pleads fraud and RICO claims and dismissal is inappropriate.

Federal Rule of Civil Procedure 8(a) simply requires a pleading that states a valid claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). On a party's Motion to Dismiss pursuant to Federal Rule 12(b)(6), a reviewing court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir.2005).

Commonly known as notice pleading, the standard for pleadings set by the Federal Rules dictates that, in order to be entitled to the presumption of truth, "a complaint ... may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice to enable the opposing party to defend effectively." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir.2011).

Rule 9(b) requires a party to state with particularity the circumstances constituting fraud or mistake when alleging the same. Fed.R.Civ.P. 9(b). Rule 9(b) requires a plaintiff to allege "the who, what, when, where, and how" of the fraudulent conduct. *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir.1997). The particularity requirement of Rule 9(b) applies to state-law causes of action. *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir.2003). It also extends to claims which sound in fraud and allege a unified course of fraudulent conduct, *see Id.* at 1103–04, including civil RICO claims, *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9th Cir.1989). When invoking a district court's jurisdiction under 28 U.S.C. § 1332, a plaintiff must plead the state law elements of a fraud claim. *See 389 Orange Street Partners v. Arnold,* 179 F.3d 656, 663 n. 2 (9th Cir.1999) (citing *Moore v. Brewster,* 96 F.3d 1240, 1245–46 (9th Cir. 1996)).

Plaintiff Moore's fraud claim alleged against ACS in Count II meets the requirements of Rules 8(a) and 9(b).

To establish a *prima facie* case of actual fraud, the party asserting the claim must establish the following nine elements: (1) a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9) the

hearer's consequent and proximate injury or damages caused by their reliance on the representation.

*In re Estate of Kindsfather,* 326 Mont. 192, 108 P.3d 487, 490 (2005) (citations omitted). The fraud count of Plaintiffs' First Amended Complaint accounts for the who, what, when, where, and how of the alleged fraud in each of the specific elements of the *prima facie* claim under Montana law. In detailing the parties to this action, Plaintiffs have accounted for the specific role ACS played in the alleged fraudulent scheme. (*See* doc. 82 at 3–4.) Introduction of allegations common to all counts and common to Plaintiff Moore also contribute the necessary detail to plead the fraud alleged. (*See id.* at 7–10, 16–17.)

 Plaintiff Moore's constructive fraud claim against ACS in Count IV also meets the requirements of Rules 8(a) and 9(b). A claim of constructive fraud requires similar detail, except a plaintiff need not identify an intent to deceive or dishonesty of purpose. *See Town of Geraldine v. Montana Municipal Insurance Authority,* 347 Mont. 267, 198 P.3d 796, 801 (2008). Count IV of the First Amended Complaint details the circumstances surrounding Moore's claim that he would not have purchased the insurance policy but for the alleged representation that it provided a comprehensive benefit. (*See* Doc. 82 at 22–23.) The factual allegations specific to all counts and those alleged to Plaintiff Moore, (*see id.* at 7–10, 16–17), coupled with the specific allegations of Count IV, (*see id.* at 22–23), are adequate under Rules 8(a) and 9(b).

 Plaintiffs' RICO claim in Count VIII is sufficiently pled. Plaintiffs RICO claims meet the standard set by the Ninth Circuit in that they identify the time, place, and manner of each fraud, as well as the role of each defendant in the scheme. *See Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9th Cir.1989). Plaintiffs' complaint differentiates the alleged fraudulent acts and designates the participation of each Defendant in the pattern of fraud alleged. (Doc. 82 at 25–28.) The role of each Defendant is specifically alleged in the recital of the parties to the current lawsuit, (*see id.* at 3–4), the statement of Plaintiffs' claims, (*see id.* at 5–7), and

allegations common to all counts, (*see id.* at 7–10), and to each Plaintiff, (*see id.* at 10–17).

ACS argues that the incorporation by reference of introductory allegations common to each Plaintiff and to all counts is insufficient, citing *Town of Geraldine.* (Doc. 57 at 8.) There, a Count alleging constructive fraud only consisted of two sentences, one incorporating previous allegations by reference and the next alleging the circumstances constituted constructive fraud. *Town of Geraldine v. Montana Municipal Insurance Authority,* 347 Mont. 267, 198 P.3d 796, 801 (2008). The pleading in this matter is distinguishable. Plaintiffs' fraud count incorporates earlier statements common to each Plaintiff and common to all counts by reference. The statements which follow, however, detail how earlier allegations fit with each element of a claim for fraud under Montana law. Plaintiff Moore's constructive fraud claim presented in Count IV proceeds similarly, as does Plaintiffs' RICO claim alleged in Count VIII.

Plaintiffs' fraud, constructive fraud, and RICO claims are sufficiently plead under the standards set by the Federal Rules. Accordingly, ACS's Motion to Dismiss the fraud, constructive fraud, and RICO counts of the complaint is denied.

### C. Punitive Damages

Plaintiffs' First Amended Complaint includes a request for punitive damages. (Doc. 82 at 29.) Defendant ACS argues Plaintiffs' punitive damages claim is insufficiently pled under Montana law and must be dismissed. (Doc. 57 at 12–13.) This argument is predicated on the conclusion that Plaintiffs' fraud claims are insufficiently pled. (*See id.*) Plaintiffs argue punitive damages are appropriate if ACS is determined guilty of actual fraud. (Doc. 68 at 8.) Because Plaintiffs present a viable, sufficiently-pled claim for fraud, punitive damages may be appropriate and Defendant ACS's Motion to Dismiss this claim is denied.

### D. Arguments as to Individual Plaintiffs

#### 1. Renee Jones

 Defendant ACS argues Renee Jones' claims are barred by the expiration of

the applicable statutes of limitation and must be dismissed. (Doc. 57 at 15–16.) Fraud claims have a two-year statute of limitations under Montana law. *See* Mont.Code Ann. § 27–2–203. Negligence claims have a three year statute of limitations. *See* Mont.Code Ann. §§ 27–2–202(3), 204.

Plaintiff Jones agrees that the two-year statute of limitations for fraud and constructive fraud prevents her from bringing those causes of action and consents to their dismissal. (Doc. 68 at 9.) The First Amended Complaint does not allege Counts II and IV as to Plaintiff Jones. Defendant's motion is therefore moot regarding Plaintiff Jones' fraud claims.

As to Jones' negligence claims, ACS argues the limitations period began to run when Jones knew or should have known she purchased only limited medical health benefits. (Doc. 57 at 15.) ACS alleges this knowledge arose as early as August 2009 when Jones received a packet of information detailing the medical insurance benefits provided with the policy she purchased. (*Id.*) Plaintiffs argue the limitations period did not begin running until the day Jones discovered her pregnancy-related claims would not be covered through her NBLA membership, December 21, 2009. (Doc. 68 at 8.)

 The dispute as to when Plaintiff Jones became aware that her pregnancy-related claims would not be covered is a question of fact inappropriate for resolution on Defendant's Motion to Dismiss. *See Knievel,* 393 F.3d at 1072. Plaintiff Jones has pled sufficient facts in her negligence claims to be entitled to the presumption of truth about her representation as to the date she became aware of the limited nature of the policy she purchased. *See Starr,* 652 F.3d at 1216. Construed in the light most favorable to Plaintiff Jones, the First Amended Complaint presents adequate grounds for the negligence claims alleged in Counts III and VII. Defendant ACS's motion is denied with respect to Plaintiff Jones' negligence claims.

### 2. Carol Croteau

Defendant ACS argues Carol Croteau's claims are barred by the expiration of the applicable statutes of limitation and therefore must be dismissed. (Doc. 57 at 13–15.) Plaintiffs agree that all of Carol Croteau's claims except those for breach of contract and violation of the RICO Act are time-barred by the relevant statute of limitations. (Doc. 68 at 9.) The only claims asserted by Croteau in the First Amended Complaint are Count VII, unjust enrichment, and Count VIII, RICO. (*See* doc. 82.) To the extent claims asserted in Plaintiffs' Complaint have been dropped from the First Amended Complaint, ACS's Motion to Dismiss is moot.

Plaintiff Croteau became a NBLA member on September 19, 2008. (*Doc.* 82 at 14.) Medical claims she made related to an accident in November 2008 were denied in December 2008. (*Id.* at 15.) Construed in the light most favorable to Plaintiff Croteau, she became aware of the limited benefits of her membership in the NBLA in December 2008 when her claims were denied. This action commenced four years later in December 2012. (*See* doc. 1.)

 Dismissal of Plaintiff Croteau's unjust enrichment claim is inappropriate as the facts, construed in the light most favorable to Croteau, support her claim. The unjust enrichment claim pled in the First Amended Complaint is an action based on contract or obligation related to Plaintiffs' membership in the NBLA. As such the relevant statute of limitations is governed by Mont.Code Ann. § 27–2–202. Plaintiff Croteau argues the action is not barred by the statute of limitations while Defendant ACS claims the three-year limitations period of § 27–2–202(3) applies. The relevant limitations period for Plaintiff's claim is eight years if brought "upon any contract obligation or liability founded upon an instrument in writing[.]" Mont.Code Ann. § 27–2–202(1). The period is five years if brought "upon a contract, account, or promise not founded on an instrument in writing[.]" Mont.Code Ann. § 27–2–202(2). The period is three years and the claim is barred if brought "upon an obligation or liability, other than a contract, account, or promise, not founded upon an instrument in writing[.]" Mont.Code Ann. § 27–2–202(3). Construed in the light most

favorable to Croteau, this is an action brought upon a contract obligation in writing with an eight-year statute of limitations under Mont.Code Ann. § 27–2–202(1). The differentiation between the three limitations periods set out in Mont.Code Ann. § 27–2–202 depends on facts not pled in Defendant ACS's Motion to Dismiss and the motion is accordingly denied.

■■■■ Dismissal of Plaintiff Croteau's RICO claim not appropriate because Defendant ACS has not presented specific facts surrounding the denial of Plaintiff Croteau's claims in December 2008. The statute of limitations for Plaintiff Croteau's RICO claim is four years. *See Rotella v. Wood,* 528 U.S. 549, 557, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) (citing, *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 149, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987)). The statute of limitations period for a civil RICO claim begins "when a plaintiff knew or should have known of his injury." *Id.* at 554, 120 S.Ct. 1075. Construed in the light most favorable to Croteau, she became aware of her injury in December 2008, when her claims were denied. According to the rule announced in *Rotella,* this awareness triggered the start of the limitations period on her RICO claim. This action commenced on December 10, 2012. (*See* doc. 1.) If Croteau's health benefit claims were rejected by the NBLA prior to December 10, 2008, then her RICO claim may be time-barred under Defendant's theory. Defendant has not introduced evidence to this effect in the form of an affidavit or other document suitable for consideration on a Motion to Dismiss. Therefore, Defendant's Motion to Dismiss Plaintiff Croteau's RICO claim as time-barred is denied.

Defendant ACS's argument that the limitations period for Croteau's RICO claim began when she signed up for membership in the NBLA is without merit because that event did not give rise to her awareness of the injury giving rise to her RICO claim. *See Rotella,* 528 U.S. at 554, 120 S.Ct. 1075. Accordingly, Defendant ACS's Motion to Dismiss is denied as to Plaintiff Croteau's RICO claims.

### 3. Keith Moore

Defendant ACS argues Keith Moore's claims are barred by the expiration of the applicable statutes of limitation and must be dismissed. (Doc. 57 at 16–17.) Plaintiffs counter that the events giving rise to Moore's claims took place in May 2011 when he sustained a major cardiac event. (Doc. 68 at 9.) Plaintiffs argue that Moore became aware of his claim only after this event, when payment was denied for his medical bills. (*Id.*) Plaintiffs argue Moore's claims are not time-barred because they were filed December 10, 2012, within the two-year limitations period for fraud and constructive fraud. (*Id.*)

Plaintiff Moore's fraud and constructive fraud claims are not barred by the statute of limitations. "A claim or cause of action accrues when all elements of the claim or cause of action exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court ... is authorized to accept jurisdiction of the action." Mont.Code Ann. § 27–2–102(1)(a). As with Plaintiff Croteau, construed in the light most favorable to Plaintiff Moore, his awareness of the injury giving rise to the claim is not challenged in fact by Defendant ACS's Motion to Dismiss. Accordingly, Defendant ACS's Motion to Dismiss is denied as to Plaintiff Moore's fraud and constructive fraud claims.

Defendant ACS argues Plaintiff Moore admits he does not have a claim against ACS and therefore has failed to state a claim as to ACS. (Doc. 57 at 16–17.) Plaintiffs counter that the allegations in the complaint levied by Moore relate to conduct possibly attributable to ACS and do not disclaim any conduct by ACS. (Doc. 68 at 9.) The allegations common to all counts and recitation of the parties to this action in the First Amended Complaint make it clear that, in Plaintiffs' theory of the case, ACS played a role by steering potential customers discovered through the internet and other sources to the NBLA. (*See* doc. 82 at 3–10.) Plaintiff Moore has presented sufficient allegations against ACS under Federal Rules 8(a) and 9(b). He has not disclaimed ACS's role in any claims presented in the First Amended Complaint. Accordingly, Defendant ACS's Motion to Dismiss claims by Plaintiff Moore is denied.

## II. The National Better Living Association, et al.'s Motion to Dismiss

### A. Personal Jurisdiction

The Individual Defendants argue dismissal is appropriate because the Court lacks personal jurisdiction. (Doc. 59 at 4.) Plaintiffs do not object to dismissal of claims against the Individual Defendants. (Doc. 66 at 4.) The First Amended Complaint has no reference to any claim against the Individual Defendants listed in the original complaint. (*See* doc. 82.) Defendant NBLA's Motion to Dismiss is therefore denied as moot in this regard.

AHB argues dismissal is appropriate because the Court lacks personal jurisdiction, citing Federal Rule of Civil Procedure 12(b)(2). (Doc. 59 at 2–11.) Plaintiffs object, alleging AHB has engaged in activities in Montana sufficient to meet their burden to establish jurisdiction. They argue AHB has done acts in Montana sufficient to establish general or specific personal jurisdiction over the organization. (Doc. 66 at 4–6.)

■■■ A defendant may move, prior to trial, to dismiss a complaint for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2).

> The power of a federal court entertaining a case based on diversity of citizenship to exercise personal jurisdiction over a nonresident defendant turns on two independent considerations: whether an applicable state rule or statute potentially confers personal jurisdiction over the defendant and whether assertion of such jurisdiction accords with constitutional principles of due process.

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1286 (9th Cir.1977) (citations omitted). The party invoking jurisdiction of a federal court has the burden of establishing jurisdiction. *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936). Here it is Plaintiffs' burden to demonstrate facts supporting a finding of jurisdiction to avoid Defendant AHB's Motion to Dismiss. *Data Disc,* 557 F.2d at 1285. "[T]he plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124,

1127 (9th Cir.2010) (citation and quotation omitted). On considering a Motion to Dismiss for lack of personal jurisdiction, uncontested allegations in the complaint must be read as true and disputes of fact are resolved in favor of the plaintiff. *Id.*

■■■ The state law applicable in the first inquiry is Mont. R. Civ. P. 4(b)(1). The rule incorporates principles of general and specific personal jurisdiction. *Simmons Oil Corp. v. Holly Corp.,* 244 Mont. 75, 796 P.2d 189, 194 (1990). The first sentence of the rule expresses the principle of general personal jurisdiction by inquiring as to whether a party is "found within" Montana. *Id.* A party is found within Montana if it is physically present in the state or if its contacts with the state are "so pervasive that it ... may be deemed to be physically present." *Id.* A nonresident defendant must maintain "substantial" or "continuous and systematic" contacts with Montana to be found within the state. *Id.*

The Rule also provides that specific acts of a party may satisfy the requirements of personal jurisdiction. *See* Mont. R. Civ. P. 4(b)(1)(A)–(F). For example, jurisdiction over a party is proper for any claim for relief "arising from ... the commission of any act which results in the accrual within this state of a tort action." Mont. R. Civ. P. 4(b)(1)(B).

■■■ Plaintiffs have alleged sufficient facts to support a finding of personal jurisdiction and avoid Defendant AHB's Motion to Dismiss. Plaintiffs' First Amended Complaint states AHB, pursuant to a contract with NBLA, assisted in operations and other administrative support services, "including contracting with third parties on behalf of NBLA for sales and marketing of its membership services and benefits." (Doc. 82 at 3–4, 9.) Plaintiffs also allege a significant overlap of officers and directors among the two organizations. (*Id.* at 5.) Plaintiffs claim AHB contracted with call centers to target consumers seeking affordable health insurance. (*Id.* at 9.) Plaintiffs allege the conduct of AHB and NBLA persisted over a five-year period to market insurance products to hundreds of Montana consumers, eventually triggering an investigation by the Montana State

Auditor and Commissioner of Insurance and Securities. (Doc. 66 at 6.) These allegations are sufficient to establish a continuous and systematic pattern of activity upon which to base this Court's personal jurisdiction over AHB. Furthermore, the allegations of the First Amended Complaint are sufficient grounds for specific personal jurisdiction as they present a cause of action for a tort, fraud. (*See* Mont. R. Civ. P. 4(b)(1)(B); *supra* Part I.B.)

AHB argues an affidavit presented by its CEO is adequate grounds to prevent the Court from asserting personal jurisdiction over the corporation. (Doc. 59 at 5.) The affidavit in question states AHB never contracted with Defendant Albert Cormier Solutions, LLC or Health Lead Systems, Inc. to solicit members for the NBLA. (Doc. 59, ex. B.) This is not sufficient to divest the Court of personal jurisdiction. Plaintiffs' First Amended Complaint implicates AHB in a sustained pattern of activity to market memberships in the NBLA to Montanans. These activities are grounds for the torts alleged in Plaintiffs' First Amended Complaint against AHB. At most, Defendant's affidavit establishes a contested question of fact as to the extent of AHB's involvement in the scheme, namely, whether AHB contracted with third parties to market NBLA memberships as Plaintiffs have represented. This disputed question of fact is resolved in Plaintiffs' favor, *See Brayton Purcell LLP*, 606 F.3d at 1127, and dismissal for lack of personal jurisdiction is therefore inappropriate.

## B. Adequate Factual Allegations
### 1. Affiliation Theory

The NBLA, et al., argue Plaintiffs' claims are subject to dismissal because they are not pled with adequate factual detail. (Doc. 59 at 11–12.) The NBLA, et al., first challenge the "affiliation theory" whereby Plaintiffs assert Defendants acted in concert to market and sell "junk" insurance products in Montana. They claim these arguments are simply conclusory statements on which a valid claim for relief cannot be based. (Doc. 59 at 15.) As previously stated, Plaintiffs have sufficiently pled the who, what, when, where, and how of the alleged fraudulent conduct in

this case. *See supra* Part I.B. Count V of the First Amended Complaint recites the rationale for vicarious liability of the NBLA for the alleged deeds of its allege agents pled elsewhere in the document. (Doc. 82 at 23–24.) The relationship alleged to exist among Defendants is pled with sufficient detail in Plaintiffs' description of the parties to the lawsuit, (*id.* at 3–4), statement of claims, (*id.* at 5–7), allegations common to all counts, (*id.* at 7–10), and to each defendant, (*id.* at 10–17). These recitals are incorporated by reference in Plaintiffs' allegation of NBLA's vicarious liability. (*Id.* at 23.)

### 2. Alter Ego Theory

Defendants next challenge the "alter ego theory" alleged in the complaint. (Doc. 59 at 16–19.) Because the First Amended Complaint does not assert claims against the Individual Defendants, (*see* doc. 82), this argument is moot and the Defendants' Motion to Dismiss is therefore denied in this regard.

### 3. Breach of Contract

The NBLA, et al., argue Plaintiffs' allegation of breach of contract is not sufficiently pled and should therefore be dismissed. (Doc. 59 at 19–20.) Defendants argue the Complaint is defective because it fails to show each element of the contract, including consent, and fails as a matter of law under the parol evidence rule. (*Id.*) Plaintiffs contest both of these arguments, claiming Defendants' reading of Montana caselaw on this point is incorrect, that they have, in any event, adequately pled consent, and that the parol evidence rule is inapplicable as their claim is based on an oral contract. (Doc. 66 at 9–10.)

Defendants cite *Duncan v. City of Missoula* for the proposition that each element of a contract must be pled in particularity. *Duncan* concerned a citizen's assertion an oral contract was formed by statements of members of the Missoula City Council Public Works Committee. *Duncan v. City of Missoula*, 239 Mont. 201, 779 P.2d 519 (1989). In *Duncan*, the Montana Supreme Court did not announce a pleading standard for breach of contract actions. In its opinion, the Court simply notes the elements of a contract are

not present in the case at bar, lending support to its conclusion that the District Court did not err in concluding no contract was formed by the statements of the members of the committee. *Id.*, 779 P.2d at 520.

■ Even so, Plaintiffs have sufficiently pled the elements of a contract to survive Defendants' Motion to Dismiss. Defendants claim Plaintiffs have not sufficiently alleged Defendants' consent to be bound by a contract. (Doc. 59 at 19.) Plaintiffs counter by arguing that specific acts, namely the exchange of premium payments and membership materials, are indicia of the parties' mutual assent to a contract. (Doc. 66 at 9.) These allegations, and perhaps others in the pleadings, are sufficient factual allegations regarding breach of contract to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

■ Defendants claim the Montana parol evidence rule, codified at Mont.Code Ann. § 28–2–904, bars Plaintiffs' breach of contract claim as a matter of law. (Doc. 59 at 20.) The Montana parol evidence rule provides that "[t]he execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Mont.Code Ann. § 28–2–904. Plaintiffs have not pled facts surrounding a written agreement, nor have Defendants argued that a written agreement between the parties exists. On a party's Motion to Dismiss pursuant to Federal Rule 12(b)(6), a reviewing court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir.2005). Construed in the light most favorable to Plaintiffs, the breach of contract dispute concerns an oral agreement for health insurance. Defendants' argument regarding the applicability of the parol evidence rule to bar Plaintiffs' claims is a defense. *See Northwestern Corp. v. Economic Research Group, Inc.*, 2008 WL 2532206 at *5 (D.Mont.2008). "Invocation of defenses in a motion to dismiss under Rule 12(b)(6) ... does not support dismissal because plaintiffs need not antici-

pate and attempt to plead around all potential defenses. Complaints need not contain *any* information about defenses and may not be dismissed for that omission." *Id.* Plaintiffs' breach of contract claim will not be dismissed at this time.

### 4. Unjust Enrichment

■ Defendants challenge the sufficiency of Plaintiffs' unjust enrichment claim asserted in Count VII of the First Amended Complaint, claiming Plaintiffs have not alleged any misconduct, reliance or cognizable injury by Defendants. (Doc. 59 at 20.) On the contrary, Plaintiffs have alleged Defendants took money for membership in the NBLA for which no value was provided to members. (*See* doc. 66 at 10; doc. 82 at 25.) The First Amended Complaint details allegations of misconduct or fault on the part of Defendants and alleges Defendants took advantage of Plaintiffs. (Doc. 82 at 25.) These allegations are sufficient grounds for a claim of unjust enrichment under Montana law. *See Estate of Pruyn v. Axmen Propane, Inc.*, 354 Mont. 208, 223 P.3d 845, 857 (2009). Plaintiffs' unjust enrichment claim survives Defendants' Motion to Dismiss.

### 5. RICO

■ Plaintiffs' RICO claims are not subject to dismissal for failing to meet the heightened pleading standard of Fed. R.Civ.P. 9(b). Rule 9(b) requires a party to state with particularity the circumstances constituting fraud or mistake when alleging the same. Fed.R.Civ.P. 9(b). Rule 9(b) requires a plaintiff to allege "the who, what, when, where, and how" of the fraudulent conduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997). The particularity requirement of Rule 9(b) extends to claims which sound in fraud and allege a unified course of fraudulent conduct, including civil RICO claims, *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989). To state a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275,

87 L.Ed.2d 346 (1985). Plaintiffs have pled these elements with sufficient particularity.

With respect to conduct, a plaintiff must differentiate allegations of fraudulent activity when suing multiple defendants. *U.S. v. Corinthian Colleges,* 655 F.3d 984, 997–98 (9th Cir.2011). Defendants argue the Complaint does not contain sufficient allegations of the conduct element of Plaintiffs' civil RICO claim. (Doc. 59 at 22.) Factual allegations, however, were particularly detailed as to each Defendant in Plaintiffs' recitation of their claim for fraud, (doc. 82 at 18–21), incorporated by reference in their RICO claim, (*id.* at 25). The First Amended Complaint alleges specific conduct as to each Defendant sufficient to meet the heightened pleading standard of Rule 9(b) and the rule of particularity set down in *Corinthian Colleges.*

■ Existence of an enterprise is proven by alleging an entity "associated together for a common purpose of engaging in a course of conduct." *U.S. v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). This requires "evidence of an ongoing organization, formal or informal, ... function[ing] as a continuing unit." *Id.* Defendants argue Plaintiffs fail to adequately allege the existence of an enterprise in their civil RICO claim. (Doc. 59 at 22.) Plaintiffs plead allegations of an ongoing nexus of activity among the Defendants to market and sell "junk" health insurance to Montanans. (Doc. 82 at 18–21.) Construed in the light most favorable to Plaintiffs, the factual allegations of enterprise in the First Amended Complaint are sufficient to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

A pattern of racketeering activity is defined by relationship and continuity. *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The element of relatedness depends on a pattern of conduct with "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. 2893 (quoting 18 U.S.C. § 3575(e)). Continuity may refer "either to a closed peri-od of repeated conduct, or to past conduct that by its nature projects into the future with threat of repetition." *Id.* at 241, 109 S.Ct. 2893. Defendants argue Plaintiffs have failed to plead the existence of a pattern with the detail required by Federal Rule 9(b). (Doc. 59 at 24–25.) Plaintiffs counter they have met this burden by implicating the Defendants in allegations of a course of conduct to sell "junk" health insurance products to hundreds of Montanans over the course of several months. (Doc. 66 at 12.) The First Amended Complaint specifically details three such predicate acts, directed at different consumers, with the same or similar purpose and methods. The pattern of events outlined in the First Amended Complaint details both a closed period of repeated conduct and a series of events which threaten repetition in the future. Indeed, one example of a pattern of racketeering activity cited by the Court in *H.J. Inc.* is a scheme by which bogus insurance is marketed and sold to a variety of consumers with repeated collection of premiums from month to month. *H.J. Inc.,* 492 U.S. at 242, 109 S.Ct. 2893. Plaintiffs sufficiently plead a pattern of predicate acts constituting racketeering activity to avoid dismissal under Federal Rules 9(b) or 12(b)(6).

## 6. Fraud, Negligent Misrepresentation, Constructive Fraud, and Vicarious Liability

Defendants argue Plaintiffs have "lumped the defendants together" in articulating claims for fraud, negligent misrepresentation, constructive fraud, and vicarious liability and these claims are therefore subject to dismissal under Federal Rule 9(b). A review of the First Amended Complaint reveals Plaintiffs have presented particularized allegations against each specific Defendant as to each Plaintiff, detailing their role in the alleged scheme. (*See* doc. 82.) Specifically, Plaintiffs have alleged detailed and specific allegations against Defendants relating to their respective roles in claims for fraud, (*id.* at 18–21), negligent misrepresentation, (*id.* at 21–22), constructive fraud, (*id.* at 22–23), and vicarious liability, (*id.* at 23–24). Furthermore, Plaintiffs' statement of claims, recitation of the parties to this action, and detailing of the allegations common to all Plaintiffs

and each Plaintiff individually add particularity to claims against each Defendant. (*See id.* at 3–17.)

### C. Statute of Limitations

The NBLA, et al., claim dismissal of some of Plaintiffs' claims is appropriate because they are time-barred by the relevant statute of limitations. Many of these arguments parallel those levied by Defendant ACS in their Motion to Dismiss. (*Compare* doc. 59 at 26–28 *with* doc. 56 at 13–16.)

Construed in the light most favorable to Plaintiff Jones, her claims accrued on December 21, 2009, when she became aware her NBLA membership would not cover her pregnancy-related claims. *See supra* Part I.D.1. Plaintiff Jones consented to dismissal of her fraud and constructive fraud claims based on the statute of limitations. (Doc. 66 at 14.) These claims are not asserted in the First Amended Complaint. (*See* doc. 82.) Other claims survive Defendants' Motion to Dismiss for the reasons set forth in Part I.D.1. of this Order.

Construed in the light most favorable to Plaintiff Croteau, the relevant statutes of limitation began running sometime in December 2009, when she became aware of the limited nature of the benefits to her NBLA membership and her claims were denied. *See supra* Part I.D.2. Plaintiff Croteau consented to dismissal of all claims except breach of contract and civil RICO. (Doc. 66 at 14.) The time-barred claims are not asserted in Plaintiffs' First Amended Complaint. (*See* doc. 82.) Claims asserted by Croteau in the First Amended Complaint survive Defendants' Motion to Dismiss for the reasons set forth in Part I.D.2. of this Order.

Construed in the light most favorable to Plaintiff Moore, the relevant statutes of limitation for his claims began to run in May of 2011 when the events giving rise to his medical claims took place. *See supra* Part I.D.3. Plaintiff Moore's fraud, constructive fraud, and vicarious liability claims survive Defendants' motion to Dismiss for the reasons set forth in Part I.D.3. of this Order.

### III. The United States Life Insurance Company in the City of New York's Motion to Dismiss

#### A. Plaintiff Croteau

USLI argues Plaintiff Croteau previously settled all claims against USLI and her claims in this action must therefore be dismissed pursuant to Rule 12(b)(6). (Doc. 61 at 4–5.) Croteau counters that USLI violated the Settlement Agreement and Release and she may pursue this action as she is no longer bound by the same. (Doc. 69 at 2.) Croteau claims USLI agreed to pay her outstanding medical expenses and that USLI's payment of $11,000 to Kalispell Regional Medical Center did not resolve $37,597.19 in medical expenses owed to other medical providers at the time the Settlement Agreement and Release was entered. (*Id.*) USLI argues the terms of the Consent Agreement it executed with the Montana State Auditor and Commissioner of Insurance and Securities and the Settlement Agreement and Release it executed with Croteau fully resolve all of Croteau's claims against USLI. (Doc. 61 at 5.)

Generally, in evaluating a Motion to Dismiss, the Court considers only the allegations presented on the face of the Plaintiff's Complaint. *Daniels–Hall v. National Educ. Assoc.*, 629 F.3d 992, 998 (9th Cir.2010). Extrinsic evidence may be considered if referenced in the Complaint, the evidence is central to the plaintiff's claim, and there is no dispute as to the authenticity. *Id.* The Consent Agreement USLI executed with the Montana State Auditor and Commissioner of Insurance and Securities and the Settlement Agreement and Release it executed with Croteau presented as exhibits attached to Defendant USLI's Motion to Dismiss meet all three criteria and accordingly are considered here.

Pursuant to the Consent Agreement, USLI agreed to pay "some ... outstanding medical claims[.]" (Doc. 61, ex. 1 at 2.) An e-mail drafted by an attorney for the Commissioner summarizing the Consent Agreement and Settlement Agreement and Release indicates outstanding medical bills with Kalispell Regional Medical Center will be paid pursu-

ant to these agreements. (Doc. 72, ex. 5 at 2.) Plaintiff Croteau argues Defendant USLI should have paid other claims pursuant to a "separate agreement." (Doc. 69 at 2.) The Consent Agreement indicates it "constitutes the entire agreement between the parties and that no other promises or agreements, either express or implied, have been made...." (Doc. 61, ex. 1 at 3.) Defendant USLI argues that Croteau's claim for payment of medical expenses beyond those owed to Kalispell Regional Medical Center based on this "separate agreement," distinct from the consent agreement and settlement and release entered by Plaintiff Croteau in proceedings with the Montana State Auditor and Commissioner of Insurance and Securities, is invalid as a matter of law based on the satisfaction language contained in the release. (Doc. 72 at 2.)

On a party's Motion to Dismiss pursuant to Federal Rule 12(b)(6), a reviewing court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir.2005). Even construed in the light most favorable to Croteau, the Consent Agreement and Settlement Agreement and Release appear to resolve all of Croteau's claims against USLI. The plain language of the Consent Agreement indicates it "resolves this matter." (Doc. 61, ex. 1 at 3.) The Settlement Agreement and Release as executed contemplates settlement of all damages or injuries, "is in full accord and satisfaction of disputed claims," and executed "to avoid the time and expense of possible litigation[.]" (Doc. 61, ex. 2 at 1–2.) Furthermore, the Settlement Agreement and Release includes a merger clause, making it the exclusive expression of the terms of settlement between USLI and Croteau.

Accordingly, Defendant USLI's Motion to Dismiss claims by Plaintiff Croteau is granted. Absent production of the "separate agreement" referenced in Croteau's response or a reasoned interpretation of the settlement documents that might plausibly give rise to a claim for relief, Croteau's claims against USLI do not rise to the level of plausibility, and are therefore dismissed pursuant to Rule 12(b)(6). Plaintiff will be granted leave to amend her complaint against USLI.

### B. Plaintiff Moore

USLI argues Plaintiff Moore was never insured by USLI and his claims must therefore be dismissed. (Doc. 61 at 6.) Plaintiffs do not object to the dismissal of Plaintiff Moore's claims against USLI, (doc. 69 at 3), and those claims are accordingly not asserted in the First Amended Complaint, (*see* doc. 82). Defendant's Motion to Dismiss is accordingly denied as moot in this regard.

## IV. Conclusion

In accordance with the foregoing, IT IS ORDERED that Defendant Albert Cormier Solutions, LLC's Motion to Dismiss (doc. 56) is DENIED.

IT IS FURTHER ORDERED that Defendants the National Better Living Association, et al.'s Motion to Dismiss (doc. 58) is DENIED.

IT IS FURTHER ORDERED that Defendant the United States Life Insurance Company in the City of New York's Motion to Dismiss (doc. 60) is GRANTED IN PART.